IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES THOMAS ANDERSON,<br><br>     Plaintiff,<br><br>     v.<br><br>GTCR, LLC; GTCR GOLDER RAUNER L.L.C.; GTCR GOLDER RAUNER II L.L.C.; GTCR FUND VIII, L.P.; GTCR FUND VII, L.P.; GTCR CO-INVEST FUND II, L.P.,<br><br>     Defendants. | Civil No. _____<br><br>JURY DEMANDED |

## COMPLAINT OF
## JAMES THOMAS ANDERSON

James Thomas Anderson ("Mr. Anderson"), by his undersigned attorneys, files this Complaint for breach of fiduciary duty, and in support hereof states as follows:

### NATURE OF THE ACTION

1.  This is a diversity action by a minority shareholder against a controlling shareholder seeking damages (legal damages and rescissory damages, as appropriate) for breach of fiduciary duty pursuant to *Sinclair Oil Corp. v. Levien*, 280 A.2d 717 (Del. 1971), and its progeny (*Cede, Ivanhoe Partners, Weinberger*, etc.).

## PARTIES

2.    Mr. Anderson is a natural person and a resident of Maury County, Tennessee.

3.    GTCR, LLC is a Delaware limited liability company with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

4.    GTCR Golder Rauner L.L.C. is a Delaware limited liability company with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

5.    GOLDER RAUNER II L.L.C. is a Delaware limited liability company with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

6.    GTCR FUND VIII, L.P. is a Delaware limited partnership with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

7.    GTCR FUND VII, L.P. is a Delaware limited partnership with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

8.    GTCR CO-INVEST FUND II, L.P. is a Delaware limited partnership with its principal offices at 300 North LaSalle Street, Suite 5600, Chicago, Illinois 60654.

9.    GTCR, LLC, GTCR Golder Rauner, L.L.C., GOLDER RAUNER II, L.L.C., GTCR FUND VIII, L.P., GTCR FUND VII, L.P., and GTCR CO-INVEST

FUND II, L.P. are corporate affiliates, sharing common ownership and operational control.  For purposes of this Complaint, they will be referred to collectively as "GTCR".

10.     This Court has subject-matter jurisdiction to hear this diversity action pursuant to 28 U.S.C. § 1332, because the parties are residents of different States and the amount in controversy exceeds the necessary jurisdictional minimum.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12.     This Court has personal jurisdiction over GTCR, LLC because GTCR, LLC is a Delaware limited liability company.

13.     This Court has personal jurisdiction over GTCR Golder Rauner, L.L.C. because GTCR Golder Rauner, L.L.C. is a Delaware limited liability company.

14.     This Court has personal jurisdiction over GTCR GOLDER RAUNER II, L.L.C. because GTCR GOLDER RAUNER II, L.L.C. is a Delaware limited liability company.

15.     This Court has personal jurisdiction over GTCR FUND VIII, L.P. because GTCR FUND VIII, L.P. is a Delaware limited partnership.

16.     This Court has personal jurisdiction over GTCR FUND VII, L.P. because GTCR FUND VII, L.P. is a Delaware limited partnership.

17.     This Court has personal jurisdiction over GTCR CO-INVEST FUND II, L.P. because GTCR CO-INVEST FUND II, L.P. is a Delaware limited partnership.

<u>FACTUAL ALLEGATIONS</u>

18.     Mr. Anderson was one of four founders of Capella Holdings, Inc., a Delaware corporation, and its wholly-owned subsidiary Capella Healthcare, Inc., a Delaware corporation. Collectively, Capella Holdings, Inc. and Capella Healthcare, Inc. are referred in this Complaint as "Capella" or the "Company".  Capella was formed in April 2005 to own and operate acute care hospitals and ancillary facilities and services.  As of April 16, 2014, Mr. Anderson owned approximately 6% of the approximately 63 million common shares issued and outstanding of Capella Holdings (consisting of 3,771,511 common shares as of April 17, 2014).

19.     From the company's inception until April 17, 2014, the Charter of Capella Holdings authorized issuance of up to, but no more than, 75 million shares of common stock.

20.     The reason that the Charter of Capella Holdings authorized no more than 75 million shares of common stock was to protect the minority shareholders from dilution.  In the case of Mr. Anderson, before and at the time of the formation of the company, he was promised by Joe Nolan, on behalf of GTCR, that Mr. Anderson's stake in the company would not be reduced below 5% of the common

shares of the company, protected by the limit in the Charter of 75 million common shares.

21.    At the time that Capella Healthcare was formed, affiliates of GTCR Golder Rauner II L.L.C., including specifically, without limitation, GTCR Fund VIII, L.P., GTCR Fund VIII, L.P. and GTCR Co-Invest II, L.P., invested a total of approximately $206 million in Capella Holdings.   For that investment, GTCR received approximately 206,000 Preferred Shares and 50,000,000 common shares of Capella Holdings, Inc.   As of April 16, 2014, the common shares owned by GTCR constituted approximately 79.1% of the common shares issued and outstanding of Capella Holdings, Inc.

22.    The Preferred Shares owned by GTCR accrued interest-in-kind at a rate of approximately 7% per year.   The interest-in-kind results in the accrual of additional Preferred Shares until the original and accrued Preferred Shares are redeemed by the company.   As of April 16, 2014, the GTCR accrual of Preferred Shares consisted of approximately 143,000 Preferred Shares, redeemable for approximately $143 million.

23.    In the summer of 2013, GTCR decided to try to sell the company. The sale process was fully directed and controlled by GTCR.

24.    Daniel Slipkovich, then the Chief Executive Officer of the company, retained investment bankers from Bank of America to conduct a sale process.

25.     Bank of America conducted a sale process for the company, receiving indications of interest and a number of bids from interested parties during the summer and fall of 2013.

26.     The best bid that resulted from the Bank of America sale process was the bid of Apollo Global Management, LLC ("Apollo").

27.     Apollo is a private-equity investment management company based in New York, Los Angeles, and cities around the world.  Apollo is well-capitalized and had the financial resources to easily fulfill its bid for Capella Holdings, Inc.

28.     Apollo bid $200 million for proposed convertible preferred securities in Capella Holdings on October 30, 2013.  As proposed by Apollo, Apollo would convert its convertible securities into common shares of Capella Holdings, Inc. sufficient for Apollo to own at least 51% of the issued and outstanding shares of Capella Holdings, Inc.

29.     The Apollo bid represented a valuation of the Capella Holdings, Inc. common shares of between $200 million and $400 million.

30.     The Apollo bid represented a per-share price of at least $3.17 per share for the common shares of Capella Holdings, Inc.

31.     GTCR was unwilling to sell its controlling interest in Capella Holdings, Inc. to Apollo.  Therefore, GTCR caused the termination of the Bank of America sale process.  At the November 2013 Capella Holdings Board meeting,

Mr. Earl, a GTCR-designated director, informed the Board that the Company would terminate the Bank of America sale process.   Mr. Earl further informed the Board that the Bank of America engagement letter would be signed that day, along with the termination of Bank of America's engagement.   No Board vote was called for regarding engaging or terminating Bank of America; GTCR had and continued to control the entire sale process without following the Company's ordinary and necessary corporate formalities.

32.    After GTCR terminated the Bank of America sale process, GTCR began to remove the management of the Company.   On December 9, 2013, the Company announced that Daniel Slipkovich would be replaced by Michael Wiechart as Chief Executive Officer, effective January 1, 2014.   Also in early December 2013, Mr. Anderson was informed that "there was no place for him" and that he should vacate his office at the Company by the end of December.   He was handed "voluntary termination" papers on December 20, 2013, which he did not execute.

33.    At the same time that GTCR was removing the management of the Company, GTCR had established and began to institute a plan to dilute the ownership stakes of the other existing common-stock owners, including specifically, without limitation Mr. Anderson.

34.     Upon information and belief, the plan established by GTCR to dilute the other common stockholders required a manipulation of the value of the Company's common shares, as well as a manufactured justification for the dilution of the other common stockholders.

35.     In actuality, Anderson believes that GTCR's plan was intended to deprive former common stockholders of the value of their holdings while giving that value to GTCR and the Company's new management, including specifically, without limitation, Mike Wiechart as Chief Executive Officer and Denise Warren as Chief Financial Officer.

36.     The possibility of a proposed dilution plan, called a "recapitalization" plan,[1] was presented by Mike Wiechart at the Company's board of directors' February 2014 meeting.

---

[1] Because the so-called "recapitalization" plan did not, and was not intended to, add any capital to the Company, it is periodically described in quotation marks in this Complaint.  The only purpose of the quotation marks is to remind the Court that the plan does not involve the addition of any new capital to the Company.  The plan would be more accurately characterized as a share restructuring or share conversion plan. Because the Board chose to denominate the plan as a recapitalization plan, however, it is referred to as such in this complaint.  Had Mr. Anderson paid $12,340,436.17 to retain his 6% stake in the Company, that would have been the only capital provided to the Company in the recapitalization.

37.     At that February 2014 meeting, the law firm of Kirkland & Ellis acted as legal counsel to the individual board members in their capacities as members of the board of directors of the Company.

38.     Kirkland & Ellis did not represent GTCR at the Company's February board of directors meeting.  On information and belief, Kirkland & Ellis has not advised GTCR with regard to its proposed recapitalization plan of the Company.

39.     Margaret A. Gibson, the Kirkland & Ellis partner, advising both the entire Company board of directors and the individual directors regarding the fiduciary duties that the directors owed to the Company, answered numerous legal and factual questions (at least twenty questions) regarding a possible recapitalization that were posed by Mr. Anderson in his capacity as director of the Company.

40.     In his presentation at the February board meeting, Mike Wiechart asserted two justifications for a potential recapitalization of the Company:  1) possible ratings downgrades on the company's debt; and 2) the need to "incentivize" the employees of the Company.

41.     At the Company's February board meeting, Mr. Anderson inquired whether any ratings agency had threatened a downgrade of the Company's debt rating.  Denise Warren responded that no downgrade was threatened or imminent.

In addition, Denise Warren stated that no debt issuance was currently under consideration by the Company.

42.  At the time of the Company's February board meeting, with 63 million shares issued and outstanding, out of 75 million shares authorized in the Charter of Capella Holdings, approximately 12 million common shares (equal to approximately 16% of the common shares authorized for the Company) were available for stock options or a restricted-stock plan to "incentivize" employees.

43.  Because there was no bond-ratings downgrade threatened, imminent, or likely; because there was no debt issuance planned; and because there were ample shares of common stock available to "incentivize" employees of the Company, there was no factual basis or justification for a "recapitalization" of the Company.

44.  The board of directors of Capella Holdings met on April 17, 2014.

45.  A proposed plan of recapitalization of Capella Holdings was presented to the members of the board of directors less than 48 hours prior to the board meeting.

46.  The proposed recapitalization plan did not call for the addition of any new capital to the Company.

47.     The proposed recapitalization plan called for an increase in the number of authorized common shares of Capella Holdings from 75 million shares to over 1.2 billion shares.

48.     The proposed recapitalization plan called for conversion of GTCR's Preferred Shares into common shares of the Company at a value of $0.175 per common share.

49.     At 17.5¢ per share, the value of common shares in the recapitalization plan was at least $3.00 less per share than the value of common stock represented by the Apollo bid.

50.     No event had taken place between the Apollo bid during the Bank of America sale process and the April 2014 board meeting that would reasonably justify a valuation of 17.5¢ per share.

51.     The stated basis for the 17.5¢ per share valuation of the Company's common stock was the amount of money that various investors had paid for their shares, starting in 2005.

52.     Investors' cost basis in their common shares bears no relationship to the fair market value of their shares.

53.     GTCR selected the 17.5¢ per share valuation for the Company's common shares as a mechanism to dilute the minority common shareholders and to

transfer the value of their ownership stake in the company to GTCR and Michael Wiechart and Denise Warren, Capella Holdings' new CEO and CFO.

54.     Under the recapitalization plan, GTCR's common stock ownership initially increased from 79.1% to approximately 98%.

55.     Under the recapitalization plan, the ownership stake of the minority shareholders of the Company was reduced from approximately 20% of the Company to less than 2% of the Company, on a fully diluted basis.

56.     Under the recapitalization plan, the ownership stake of Mr. Anderson in the common shares of the Company was reduced from approximately 6% to 0.308%.

57.     At the meeting of the board of directors on April 17, 2014, Mr. Anderson questioned whether there was an existing need for the Company to convert GTCR's preferred shares to common stock.  He was told that there had been no threat of imminent bond-rating downgrades, there was no plan to borrow additional funds by the Company through a bond issuance, and there was no additional incremental cost to the Company's existing debt load from the existence of GTCR's preferred shares.

58.     With regard to the stated need to "incentivize" employees of the Company, 12 million shares (out of 75 million) were available under the existing charter to issue additional shares or options to employees of the Company.

59.     At the April 17, 2014, board meeting, Ms. Gibson of Kirkland & Ellis advised each of the members of the Company's board, including specifically, without limitation, Mr. Anderson, that their fiduciary duties were to the existing common stockholders of the Company rather than to the preferred stockholders of the Company.   Ms. Gibson also advised each of the members of the Company's board, including specifically, without limitation, Mr. Anderson, that, in her opinion, the recapitalization plan might properly be reviewed by a court under the "entire fairness" standard of judicial review.

60.     At the April 17, 2014, board meeting, Ms. Gibson of Kirkland & Ellis inquired of Mr. Anderson the reason or reasons for his decision to vote against the recapitalization plan.   He stated, among other reasons, that the plan was unfair to the existing common stockholders.

61.     On April 17, 2014, the board of directors of Capella Holdings approved the proposed recapitalization plan.   Each of the directors who voted to approve the recapitalization plan were designees of GTCR.

62.     Each of the directors who voted to approve the recapitalization plan voted in the interest of GTCR and not in the interest of the common stockholders of the company.

63.     Mr. Anderson voted against the recapitalization plan as a director.

64.    Each of the directors who voted to approve the recapitalization plan is an affiliate of GTCR or has a direct pecuniary interest through GTCR in maximizing the value of GTCR's investment in the company.  Messrs. Donnini and Earl are direct affiliates of GTCR.  Mr. Nolan is a former direct affiliate in GTCR and, on information and belief, is entitled to receive pecuniary benefits from GTCR-affiliated investments.  Mr. Hensley, on information and belief, is a board member for multiple GTCR-affiliated companies.  Mr. Slipkovich, on information and belief, had a negotiated financial interest linked to the outcome of GTCR's investment in the Company, including, specifically, favorable treatment of his preferred shares in the recapitalization.

65.    Under the terms of the recapitalization, after the original common stockholders were diluted by the conversion of GTCR's preferred chares into 1.3 billion common shares, GTCR forfeited approximately 40% of its common shares; the result of this forfeiture was to overcompensate Mr. Slipkovich for his preferred shares in the recapitalization.

66.    The valuation of the common shares of GTCR that were converted under the "recapitalization" was unreasonably low, intended specifically to dilute the existing common shareholders in order to convey the value of their shares to GTCR and its affiliates, including specifically, without limitation, Michael

Wiechart, Denise Warren, and other senior management employees of the Company.

67.     On April 23, 2014, after the Board approved the recapitalization, Mr. Anderson sued Capella and the Company's directors in Chancery Court in Tennessee to enjoin implementation of the recapitalization.

68.     On April 27, 2014, Capella informed Mr. Anderson that he could retain his 5.969% common ownership stake in the new capital structure of the Company for a sum of $12,340,436.17, but that he would have to forfeit 30,030,196 shares of the 70,516,778 offered to him by Capella to even retain any common shares.  Unlike Mr. Anderson, Mr. Slipkovich was not required to forfeit any of his converted preferred shares, or any of his common holdings in the new capital structure of the Company.

69.     On or about June 24, 2014, Capella sued Mr. Anderson in Delaware Chancery Court seeking equitable and legal relief for breach of fiduciary duty and breach of contract.  In August 2014, Mr. Anderson dismissed his Tennessee action, and on September 26, 2014, Mr. Anderson filed his equitable claims against Capella and the Board directors as counterclaims and via a third-party complaint.

70.     Capella and the Board directors moved to dismiss Mr. Anderson's breach-of-fiduciary-duty claims.  On July 8, 2015, the Vice Chancellor dismissed Mr. Anderson's breach-of-fiduciary-duty equitable claims against Capella and the

Board directors because, based on the facts then known, harm to Mr. Anderson was "speculative."

71.    The actual damage caused to Mr. Anderson from the dilution to his common shares became apparent on July 26, 2015.  On or about that date, Capella Holdings announced that it was selling substantially all of its assets to Medical Properties Trust ("MPT"), a Birmingham, Alabama-based real estate investment trust.

72.    Under the terms of the deal announced between MPT and Capella Holdings, MPT has agreed to pay over $900 million cash for substantially all of the remaining assets of Capella Holdings.  In conjunction with pending contracts for the asset sales of a Missouri hospital and the Capella hospitals in Tennessee, Capella Holdings is currently under contract to receive in excess of $1 billion for substantially all of its assets.

73.    In light of the value of Capella Holdings' sale of substantially all of its assets, Mr. Anderson's dilution in the "recapitalization" resulted in an actual loss to him of millions of dollars, although the precise amount of his loss is not calculable at this time (based on facts currently known by Mr. Anderson) but is reasonably calculable upon adequate discovery.

80.    In light of the common stockholder interest that was transferred from Mr. Anderson to others, including specifically, without limitation, the current

-16-

management of Capella Holdings, Mr. Anderson's dilution in the "recapitalization" resulted in a loss to him of millions of dollars, although the precise amount of his loss is not calculable at this time but is reasonably calculable upon adequate discovery.

81.     Even when considering GTCR's surrender of its preferred shares (whether subsequent common shares were forfeited or not) in the recapitalization, Mr. Anderson's dilution in the "recapitalization" resulted in a loss to him of millions of dollars, although the precise amount of his loss is not calculable at this time but is reasonably calculable upon adequate discovery.

82.     The closing of the sale of Capella Healthcare to MPT is currently expected to take place on or before August 31, 2015.  Based on the consideration to be paid at that closing, and based on the consideration paid to Capella for the sale of the Missouri and Tennessee hospitals, a calculation of Mr. Anderson's actual loss from the "recapitalization" should be possible to perform upon adequate discovery.

<u>CLAIMS</u>

<u>COUNT I – BREACH OF FIDUCIARY DUTY OF LOYALTY</u>

83.     The allegations contained in paragraphs 1 through 82 are reiterated here as if alleged in their entirety as part of this count

84.     This count is directed against each of the GTCR defendants, jointly and severally.

85.     The directors of Capella Holdings except for Mr. Anderson were designated by GTCR to be directors of Capella Holdings as of April 17, 2014.

86.     GTCR, through its approximately 80% ownership of the common stock of Capella Holdings, completely controlled and dominated the election of a majority of the directors of Capella Holdings.  In fact, GTCR often made business decisions for Capella Holdings without consulting the Board, such as, for example, without limitation, GTCR's unilateral decision to terminate the negotiations with Apollo regarding a sale of the Company.   In addition, for example, Capella ignored the Stockholders Agreement and placed either Mr. Donnini or Mr. Earl on the Board while retaining Mr. Nolan on the Board, without a shareholder vote. Due to its control of Capella Holdings and Capella Healthcare, GTCR owed a fiduciary duty of loyalty to the Company's common stockholders.

87.     GTCR breached its duty of loyalty to the Company's common stockholders, in particular, without limitation, by diluting the relative ownership holdings of the common stockholders through the recapitalization to its own advantage.

88.     As directors of Capella Holdings, each of the GTCR directors owed a fiduciary duty of loyalty to the common stockholders of the company as a whole.

89.     Each of the GTCR directors breached his fiduciary duty of loyalty to the common stockholders of the Company.

90.     Rather than protect the interests of the common stockholders of the Company, each of the GTCR directors advanced the financial interest of the majority stockholder of the Company, GTCR (including its affiliates), in approving the recapitalization plan.

91.     The recapitalization plan approved by the GTCR directors benefitted GTCR and its affiliates, including specifically, without limitation, the new senior management of the Company, to the detriment of the minority common stockholders, including specifically, without limitation, Mr. Anderson.

92.     There was no business necessity, need, or benefit to the Company for the recapitalization plan.

93.     In approving the recapitalization plan, the GTCR directors breached the duty of loyalty that they owed to the common stockholders of the Company. By causing the GTCR directors to approve the recapitalization plan, GTCR breached the duty of loyalty that it owed to the common stockholders of the Company.

94.     The recapitalization plan approved by the GTCR directors on April 17, 2014, is intrinsically unfair, utterly failing the "entire fairness" substantive standard for judicial review of conflicted board actions.

95.    Mr. Anderson has been harmed, as an existing common stockholder as of April 17, 2014, by GTCR's and the GTCR directors' breach of their fiduciary duty of loyalty in approving the recapitalization plan.

96.    The amount of damages that Mr. Anderson has suffered from GTCR's breach of their fiduciary duty of loyalty is not specifically calculable at this time but is subject to proof by a reasonable certainty through discovery of the consideration paid to Capella Holdings for all or substantially all of its assets.

97.    Mr. Anderson is entitled to damages against each of the GTCR defendants, jointly and severally, for the amount of his actual loss due to GTCR's breach of its fiduciary duties.

<u>COUNT II – BREACH OF FIDUCIARY DUTY OF GOOD FAITH</u>

98.    The allegations contained in paragraphs 1 through 97 are reiterated here as if alleged in their entirety as part of this count.

99.    This Count II is asserted against each of the GTCR defendants, jointly and severally.

100.    The GTCR designated directors were directors of Capella Holdings as of April 17, 2014, although they were not all duly appointed.

101.    As directors of Capella Holdings, whether duly appointed or not, each of the GTCR directors owed a fiduciary duty of good faith to the common stockholders of the Company while acting as duly-appointed directors.

-20-

102.   GTCR itself owed a fiduciary duty of good faith to the common stockholders of the Company.

103.   Each of the GTCR directors breached their fiduciary duty of good faith to the common stockholders of the Company.

104.   Each of the GTCR defendants breached their fiduciary duty of good faith to the common stockholders of the Company.

105.   The proffered reason for the recapitalization plan by GTCR, the GTCR directors, and the current management of the Company is a canard, designed to distract from the value taken from Mr. Anderson and other common stockholders and delivered to GTCR, Mr. Slipkovich, and certain members of the Company's management (including specifically, without limitation, the CEO and CFO of the Company).

106.   There was no business necessity, need, or benefit to the Company for the recapitalization plan.

107.   The recapitalization plan added no capital to the Company.

108.   At the time of the April 17, 2014, board meeting, there was no imminent or threatened downgrade of the Company's outstanding bonds, nor did the existence of the preferred shares impose any marginal costs on the Company.

109.   At the time of the April 17, 2014, board meeting, up to 12 million shares were available under the Company's Charter to "incentivize" the Company's employees through a stock-option or restricted-stock plan.

110.   At the Company's April 17, 2014 board meeting, minutes of the February board meeting were presented that falsely stated that there was an imminent threat of a bond-ratings downgrade.

111.   At the Company's April 17, 2014 board meeting, minutes of the February board meeting were presented that falsely stated that no inquiry was made at the February board to Ms. Gibson of Kirkland & Ellis, despite the fact that Mr. Anderson directed many questions to Ms. Gibson at that meeting, specifically with regard to bond ratings and employee incentive plans.

112.   Because the GTCR defendants and the GTCR directors breached their duties of good faith in promulgating and approving the recapitalization plan, the recapitalization plan must be reviewed by this Court under the "entire fairness" substantive standard.

113.   The recapitalization plan approved by the GTCR-designated directors on April 17, 2014 is intrinsically unfair, utterly failing the "entire fairness" substantive standard for judicial review of conflicted board actions.

114.   Mr. Anderson has been harmed, as an existing common stockholder on April 17, 2014, by GTCR's and the GTCR directors' breach of their fiduciary duty of good faith in approving the recapitalization plan.

115.   The amount of damages that Mr. Anderson has suffered from GTCR's and the GTCR directors' breaches of the fiduciary duty of good faith is not specifically calculable at this time but is subject to proof by a reasonable certainty through discovery of the consideration paid to Capella Holdings for all or substantially all of its assets.

116.   Mr. Anderson is entitled to damages against each of the GTCR defendants, jointly and severally, for the amount of his actual loss due to GTCR's breach of its fiduciary duties.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Anderson respectfully requests that this Court:

1.   Award actual legal damages, in an amount to be proven before a jury at trial, against each of the GTCR defendants, jointly and severally, for breach of fiduciary duty; and

2.   In the alternative, award rescissory damages, in an amount to be proven at trial, against each of the GTCR defendants, jointly and severally, for breach of fiduciary duty; and

3.      Issue such other legal relief as the Court deems lawful and just.


Dated:  August 28, 2015                  Respectfully submitted,
        Wilmington, Delaware
                                         HILLER & ARBAN, LLC


                                         **/s/ Adam Hiller**
                                         Adam Hiller (DE No. 4105)
                                         Brian Arban (DE No. 4511)
                                         Johnna M. Darby (DE No. 5153)
                                         1500 North French Street, 2nd Floor
                                         Wilmington, Delaware 19801
                                         (302) 442-7676 telephone
                                         ahiller@hillerarban.com

                                         -and-

                                         Mark Pickrell (pro hac vice pending)
                                         The Pickrell Law Group, P.C.
                                         5701 Old Harding Pike, Suite 200
                                         Nashville, TN 37205
                                         (615) 352-9588
                                         mark.pickrell@pickrell.net

                                         *Attorneys for J. Thomas Anderson*

                          JURY TRIAL DEMAND

        Mr. Anderson respectfully demands a jury trial on any issue triable of right

by a jury.

                                         **/s/ Adam Hiller**
                                         Adam Hiller (DE No. 4105)